IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

BILLY RAY RUSS,  #106835           )
                                   )
          Plaintiff,               )
                                   )
v.                                 )        CIVIL ACTION NO. 1:18-CV-718-RAH
                                   )                    [WO]
DONALD VALENZA, et al.,            )
                                   )
          Defendants.              )

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Billy Ray

Russ, a pre-trial detainee confined in the Houston County Jail at the time relevant to the

complaint, challenging the constitutionality of medical treatment provided to him at the jail

for a decayed tooth, blurry vision and hemorrhoids from April of 2018 through August of

2018.  Doc. 1 at 1–3.  Russ contends his suffering from type-2 diabetes contributed to these

conditions and warranted referral for off-site emergency treatment.  Doc. 1 at 2.  Russ

names Donald Valenza, the Sheriff of Houston County, Bill Rafferty, a Major with the

Houston County Sheriff's Department, James Brazier, the Jail Commander, Spencer

Downs and Michael Champion, a corrections deputy and former corrections deputy, and

medical personnel Jason Smoak, the Physician's Assistant for the jail, and Connie Hinson,

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the
docketing process.

a Licensed Practical Nurse employed at the jail, as defendants.  Doc. 1 at 1.[2]  Russ seeks

a declaratory judgment, injunctive relief and monetary damages for the alleged violation

of his constitutional rights.  Doc. 1 at 4.  As Russ does not state otherwise and upon its

liberal construction of the complaint, the court construes this pleading to seek relief from

the defendants in both their individual and official capacities.

The defendants filed an answer, special report, supplement to the report and

supporting evidentiary materials — including affidavits and certified medical records —

addressing Russ' claims of inadequate medical and dental treatment.  In these documents,

the defendants assert Russ received appropriate treatment for his conditions  as determined

by the jail's medical professionals, including a referral to an outside medical clinic, and

adamantly deny acting with deliberate indifference to Russ' medical needs.

The court issued an order directing Russ to file a response to the arguments set forth

by the defendants in their special report and advising him that his response should be

supported by affidavits or statements made under penalty of perjury and other appropriate

evidentiary materials.  Doc. 44 at 2.  The order specifically advised the parties that "**unless**

**within fifteen (15) days from the date of this order a party files a response in**

**opposition which presents sufficient legal cause why such action should not be**

**undertaken** . . . the court may at any time [after expiration of the time for the plaintiff to

file a response to the order] and **without further notice to the parties** (1) treat the special

---

[2]The surnames of two defendants listed in the complaint are not correct and one's surname is not provided. For purposes of clarity and as Russ does not dispute the correct names provided by the defendants, the undersigned will refer to the defendants by their true names.

reports and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment,  and (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with the law."  Doc. 44 at 3 (emphasis in original) (footnote omitted).  Russ filed a rebuttal, declaration and other supporting evidentiary materials on February 27, 2019.  Doc. 47.  n affidavit and supporting evidentiary materials in response on October 18, 2018.  Doc. 29.

Pursuant to the directives of the above referenced order, the Magistrate Judge deems it appropriate to treat the defendants' report and supplement thereto as a motion for summary judgment.  Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response and supporting evidentiary materials, the undersigned concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed.R.Civ.P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including

pleadings, discovery materials and affidavits or properly sworn statements], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, sworn statements, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories,

and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose as an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed.R.Civ.P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker v. Darby*,

911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes

involving material facts are relevant and materiality is determined by the substantive law

applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary

judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as

true "statements in [the plaintiff's] verified complaint, [any] sworn response to the

[defendants'] motion for summary judgment, and sworn affidavit attached to that

response[.]"  *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*,

881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and

uncorroborated statements "based on personal knowledge or observation" set forth in a

verified complaint or affidavit may create an issue of material fact which precludes

summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir.

2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but

that alone does not permit [the court] to disregard them at the summary judgment stage . .

. .  Courts routinely and properly deny summary judgment on the basis of a party's sworn

testimony even though it is self-serving.").  However, general, blatantly contradicted and

merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint

or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to a plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the undersigned finds that Russ has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *See Matsushita*, 475 U.S. at 587.

### III.  IMMUNITY DEFEENSES

#### A.  Sovereign Immunity

To the extent Russ seeks monetary damages from the defendants in their official capacities, the defendants maintain that in operating the Houston County Jail they are state actors entitled to sovereign immunity. Doc. 38 at 5–6; *Free v Granger*, 887 F.2d 1552, 1557 (1th  Cir. 1989) (holding that suits against sheriffs "in their official capacities are effectively suits against the entity that those officials represent. Thus, the plaintiff's claim against [the] Sheriffs . . . is in substance a Section 1983 action in which the State of Alabama is the real party in interest."); *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1527 (1th  Cir. 1990) ("hold[ing] that the sheriff's eleventh amendment immunity . . . extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego."); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430–31 (11th Cir 1997) (holding that county jailers, like sheriffs and deputies, are entitled to Eleventh Amendment

immunity for official capacity claims); *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1288–89 11th Cir 1998)(holding that a sheriff, his deputies and other jail employees act as officers of the State when supervising inmates and otherwise operating county jails for purposes of imposing liability under § 1983).

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751,

753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Summary judgment is therefore due to be granted in favor of the defendants on these claims.

### B.  Qualified Immunity

The defendants also raise the defense of qualified immunity to the claims lodged against them in their individual capacities. Doc. 38 at 6–8. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Qualified immunity gives government officials

breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit." *Lassiter v. Ala. A&M University Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Qualified immunity, however, is only an affirmative defense to a request for damages; it has no impact on requests for declaratory or injunctive relief. *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow v. Alexander*, 457 U.S. 800 (1982); *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. In this case, it is

clear "that the defendants were acting within their discretionary authority[]" as jail officials at the time of the incidents at issue so "the burden shifts to [Russ] to show that qualified immunity is not appropriate."  *Id.*; *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).  To meet this burden, Russ must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir.2004); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation.").  This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated."  *Id.*; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42) (holding that a court may analyze the elements "in whatever order is deemed most appropriate for the case.").

## IV.  DISCUSSION

### A.  Applicable Standard of Review — Deliberate Indifference

The actions about which Russ complains occurred while Russ was a pretrial detainee confined in the Houston County Jail.  His claims are therefore subject to review under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than

the Eighth Amendment's prohibition against cruel and unusual punishment which governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). "[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

> In a recent decision addressing a pretrial detainee's excessive force claim, the United States Supreme Court held that under the Fourteenth Amendment the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable. . . . A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, [576 U.S. 389, 397] 135 S.Ct. 2466, 2473 (2015). The court in *Kingsley* reaffirmed that a defendant "must possess a purposeful, a knowing, or possibly a [criminally] reckless state of

mind.   That is because . . . 'liability for **negligently** inflicted harm is categorically beneath the threshold of constitutional due process.' *Id.* at [396,] 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).  The [*Kingsley*] Court further emphasized that the 'guarantee of due process has [historically] been applied to **deliberate** decisions of government officials to deprive a person of life, liberty or property.'" *Id.*

The Supreme Court has not yet ruled on whether to extend the objective reasonableness standard of review set forth in *Kingsley* to cases of pretrial detainees which do not involve the use of excessive force (i.e., cases challenging medical treatment or conditions of confinement).  However, an extensive search of post-*Kingsley* cases indicates that the vast majority of federal courts, including [this court and] the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees which challenge medical treatment and other conditions.  *E.g.*, *Massey v. Quality Correctional Health Care, Inc., et al.*, 2015 WL 852054 (M.D. Ala. Feb. 26, 2015), affirmed on appeal, [*Massey v. Montgomery County Detention Facility*, 646 F. App'x 777] (11th Cir. 2016) (addressing claims of a pretrial detainee challenging the medical treatment provided to him while in a county jail, without reference to *Kingsley*, and applying the deliberate indifference standard to find that the defendants' actions did not rise to the level of deliberate indifference); *McBride v. Covington County Health Auth.*, 2015 WL 3892715, *10 & 15–20 (M.D. Ala. June 24, 2015) (recognizing the impact of *Kingsley* on excessive force claims brought by pretrial detainees but subsequently applying the deliberate indifference standard to the plaintiff pretrial detainee's medical treatment claim) [*affirmed* 658 F. App'x 991 (11th Cir. 2016) (holding that district court properly applied the deliberate indifference standard of the Eighth Amendment in denying summary judgment to defendant on pretrial detainee's challenge to constitutionality of medical treatment provided for skin condition)]; *White v. Franklin*, 2016 WL 749063, at *5–8 (N. D. Ala. Jan. 28, 2016), adopted, 2016 WL 741962 (N.D. Ala. Feb. 25, 2016) (applying *Kingsley's* objective reasonableness standard to pretrial detainee's claim of excessive force but addressing his claims of inadequate medical treatment under the deliberate indifference standard of the Eighth Amendment in accordance with prior Eleventh Circuit precedent); *Woodhouse v. City of Mount Vernon, et al.*, 2016 WL 354896, at *10 n.4 (S.D.N.Y. Jan. 26, 2016) (applying "a subjective standard to [detainee's] Fourteenth Amendment claim of deliberate indifference to serious medical needs, just as it would to an Eighth Amendment claim brought by a convicted prisoner," despite *Kingsley*); *Thomley v. Bennett, et al.*, 2016 WL 498436, at *7 (S.D. Ga. Feb. 8, 2016), adopted, 2016 WL 3454383 (S.D. Ga. Mar. 14,

2016) (finding *Kingsley* does not "provide[] the standard to be applied" to pretrial detainee's medical treatment claims).

As indicated above, the Eleventh Circuit recently applied the deliberate indifference standard to a pretrial detainee's claims challenging the constitutionality of medical treatment provided to him by health care personnel at a county jail. *See Massey*, [646 F. App'x at 781]. In affirming the trial court's decision to grant summary judgment for the defendants, the Court held:

> There is . . . no basis for [Plaintiff's] claim that [Defendant physicians'] diagnosis and treatment of his ailments rose to the level of deliberate indifference.  There is a difference between "mere incidents of negligence or malpractice" and deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991).  The former, "while no cause for commendation, cannot . . . be condemned as the infliction of punishment" in violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 1979 (1994).  The latter, by contrast, is a violation of the Eighth Amendment, but requires the plaintiff to prove that the defendant knew of a serious risk to the plaintiff and affirmatively disregarded it. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  There is no genuine dispute that [the jail physicians] actively attempted to diagnose and treat [Plaintiff].  The treatment they offered may not have been as effective or instantaneous as [Plaintiff] would have liked, but the bare fact that treatment was ineffectual or not immediately administered does not mean that those responsible for it were deliberately indifferent.  Because the record does not establish a genuine dispute that [the attending physicians] made a good-faith effort to treat [Plaintiff's] ailments, summary judgment was appropriate.

*Id*.  The Sixth, Seventh and Ninth Circuits are in accord.  *See Baynes v. Cleland*, 799 F.3d 600, 617–18 (6th Cir. 2015); *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015); *Castro v. County of Los Angeles*, 797 F.3d 654, 664-65 (9th Cir. 2015).

*Smith v. Terry*, 2016 WL 4942066 at *3 (M.D. Ala. Aug. 15, 2016), Recommendation

adopted as opinion of the court, 2016 WL 4923506 (M.D. Ala. Sept. 14, 2016); *Nam Dang*

*by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir.

2017) (holding that a pre-trial detainee's claims challenging medical treatment provided to him "are evaluated under the same [deliberate indifference] standard as a prisoner's claim of inadequate care under the Eighth Amendment" and specifically refusing to extend the objective reasonableness standard set forth in *Kingsley* to such claims).

Other district courts post-*Kingsley* have also applied the deliberate indifference standard of the Eighth Amendment in deciding medical claims presented by pretrial detainees. *Oliver v. County of Gregory*, 2016 WL 958171, at *6 n.11 (D. So. Dakota Mar. 8, 2016) (noting that the holding in *Kingsley* "was limited to excessive force cases under the Fourteenth Amendment as set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, the Eighth Circuit still utilizes the subjective measure of deliberate indifference . . . for pretrial detainees in Fourteenth Amendment cases involving an allegation of deprivation of medical care."); *Hall v. Ramsey County*, 801 F.3d 912, 917 n.3 (8th Cir. 2015) (noting *Kingsley's* holding in discussion of pretrial detainee's excessive force claim and then applying subjective prong of deliberate indifference to his deprivation of medical care claim.); *Figueira by and through Brown v. County of Sutter*, 2015 WL 6449151 (E.D Calif. Oct. 23, 2015) (holding that despite *Kingsley* pretrial detainee "must show the defendants acted with deliberate indifference to his serious medical needs[]" as required by prior Ninth Circuit law applying same legal standard to Eighth and Fourteenth Amendments claims challenging conditions claims, including those alleging a denial of adequate medical treatment); *Gilbert v. Rohana*, 14 Civ. 630, 2015 WL 6442289, at *4 (S.D. Ind. Oct. 23, 2015) ("The court finds that *Kingsley* did not alter the legal standard for denial of medical treatment claims brought by pretrial detainees like Plaintiff. *Kingsley* was limited to

excessive force claims brought by pretrial detainees; the Court did not comment on the appropriate standard for denial of medical treatment claims brought by such detainees."); *Larson v. Stacy*, 2015 WL 5315500, at *6–9 (N.D. Ala. Aug. 18, 2015), Recommendation adopted, 2015 WL 7753346 (N.D. Ala. Dec. 2, 2015) (court utilized objective reasonableness standard to address pretrial detainee's excessive force claims but applied deliberate indifference standard to his medical care claims); *Johnson v. Hodgson*, 2015 WL 5609960, at *5 (D. Mass. Sept. 22, 2015) (court acknowledged application of *Kingsley* to pretrial detainee's excessive force claim but stated deliberate indifference standard was proper standard for review of his inadequate medical treatment claims); *Landy v. Isenberg*, 2015 WL 5289027, at *4 (D. Md. Sept. 9, 2015) (same); *Wells v. T.C.C.F.*, 2015 WL 4875872, at *2 (N.D. Miss Aug. 15, 2015) (recognizing that under *Kingsley* "[m]ere negligence . . . will not support the finding of a constitutional violation" on a pretrial detainee's challenge to medical care and then holding that to proceed on such a claim "a detainee must demonstrate" each of the elements of deliberate indifference); *Roberts v. C-73 Medical Director*, 2015 WL 4253796, at *3 (S.D. N. Y. July 13, 2015) ("The decision in *Kingsley* dealt only with excessive force claims, thus [this] Court continues to abide by Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs."); *Kennedy v. Bd. of Commissioners for Oklahoma County*, 2015 WL 4078177, at *1 n.6 (W.D. Okla. July 6, 2015) (holding that the Supreme Court's decision in *Kingsley* "does not alter the [deliberate indifference] standard applicable to medical care claims" of pretrial detainees.); *Austin v. County of Alameda*, 2015 WL 4051997 at *3 (N.D. Cal July 2, 2015) (same).

Based on the foregoing authorities, the undersigned deems it appropriate to apply the deliberate indifference standard to Russ' claims of inadequate medical treatment instead of the objective reasonableness standard applied to the excessive force claim before the Supreme Court in *Kingsley*.[3]

### B.  Deliberate Indifference to Medical Needs

In the pleadings before the court, Russ asserts that medical personnel employed at the Houston County Jail denied him adequate treatment for his decayed tooth, blurry vision and hemorrhoids.  Russ also alleges that correctional officers assigned to the jail failed to intervene regarding the treatment provided by medical personnel.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, jail and medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary

---

[3]Under the facts of this case as set forth below, the undersigned further finds that regardless of the standard applied — deliberate indifference or objective reasonableness — Russ' claims do not survive summary judgment.

treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment.)"

To demonstrate an Eighth Amendment violation, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834; *Keohane v. Fla. Dept. of Corrections Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (internal citations and quotations omitted) (holding that "[a] deliberate-indifference claim entails both an objective and a subjective component. First, the inmate must establish an objectively serious medical need—that is, one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm. Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had subjective knowledge of a risk of serious harm and (2) that they disregard[ed] that risk (3) by conduct that was more than mere negligence."); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (holding that the law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation). With respect to the requisite objective element, an inmate must first show "an objectively substantial risk of serious harm . . . exists. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837–38;

*Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838).

> That medical malpractice—negligence by a physician [or other medical provider]—is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison [medical provider's] harmful acts were intentional or reckless.  *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S.Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts."  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach a defendant must know of and then disregard an excessive risk to prisoner's health

or safety).  Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). This is likewise true for a claim reviewed under the objective reasonableness standard.

When challenging the constitutionality of medical care under either standard of review, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment.  *Estelle*, 429 U.S. at 104–07, 97 S.Ct. 285.  An allegation of negligence is [likewise] insufficient to state a due process claim. *Daniels v. Williams*, 474 U.S. 327, 330–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)." *Simpson v. Holder*, 200 F.App'x 836, 839 (11th Cir. 2006); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) (Due to "the state of mind requirement for all due process violations[,] . . . medical malpractice and negligence claims are not actionable under [42 U.S.C.] § 1983, but are the grist of state law.); *Kingsley*, 576 U.S. at 395–96, 135 S.Ct. 2472 (With respect to the "legally requisite state of mind" attendant to a defendant's physical acts in determining the objective reasonableness of such acts, "the defendant must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind.  That is because . . . 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1999); *Estelle*, 429 U.S. at 106 (neither negligence nor medical malpractice

"become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835–36 (A complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Daniels*, 474 U.S. at 332 (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries. . . .  We have previously rejected reasoning that would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (internal quotations omitted); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F.App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint alleging "misdiagnosis and inadequate treatment [as such] involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding that plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012), appeal dismissed (11th Cir. 12-14749 Nov. 28, 2012) (finding

that misdiagnosis of inmate with Ganglion cyst that "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . .  At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at \*5 (W.D. N.C. July 16, 1999) (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.  Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.").  In addition, *Kingsley's* requirement of a purposeful or knowing state of mind, its assertion that due process protects only against deliberate acts and its affirmation that negligence categorically fails to provide a basis for liability in section 1983 actions, 576 U.S. at 396, 135 S.Ct. at 2472, serves to preclude the constitutionalization of medical malpractice claims such as those which allege misdiagnosis or negligent treatment of a condition.   Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate, whether he is a pretrial detainee or convicted prisoner.

Additionally, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things: aware[ness] of facts from which

the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted) (alterations in original).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.   When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Detention Facility*, 646 F.App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*,

> 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient'
> to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere
> medical malpractice does not constitute deliberate indifference).  Nor does a
> simple difference in medical opinion between the prison's medical staff and
> the inmate as to the latter's diagnosis or course of treatment support a claim
> of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing
> *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation

and internal quotations omitted) (To show deliberate indifference to a serious medical need,

a plaintiff must demonstrate that the defendants' response to the need was more than

"merely accidental inadequacy, negligence in diagnosis or treatment, or even medical

malpractice actionable under state law.").   Moreover, "as *Estelle* teaches, whether

government actors should have employed additional diagnostic techniques or forms of

treatment is a classic example of a matter for medical judgment and therefore not an

appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d

at 1545 (internal quotation marks omitted).  "A difference of opinion as to how a condition

should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*,

236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th

Cir. 1985) (holding that mere fact inmate desires a different mode of treatment does not

amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662

F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the

Eighth Amendment simply because their opinions concerning medical treatment conflict

with that of the inmate-patient).  "Self-serving statements by a plaintiff do not create a

question of fact in the face of contradictory, contemporaneously created medical records."

*Whitehead v. Burnside*, 403 F.App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990)).

The law is likewise clear that an inmate is not entitled to referral to an outside physician for evaluation. *Amarir v. Hill*, 243 F.App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm."); *Dixon v. Jones*, 2014 WL 6982469, at *9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion regarding treatment provided to inmate for physical injuries did not constitute deliberate indifference); *Youmans v. City of New York*, 14 F.Supp. 357, 363–64 (S.D.N.Y. 2014) (noting that "courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights."); *Schomo v. City of New York*, 2005 WL 756834, at *10 (S.D.N.Y. Apr. 4, 2005) (finding doctor's decision to deny inmate second opinion did not constitute deliberate indifference "since prisoners are not constitutionally entitled to a second medical opinion.").

1.  **The Medical Defendants.**  Russ complains defendants Smoak and Hinson denied him treatment for his decayed tooth, blurry vision and hemorrhoids during his incarceration at the Houston County Jail.  Doc. 1 at 1–3.  Specifically, Russ argues Smoak

denied his requests for outside referrals "one for the eye doctor and the other for the colon procedure and hemorr[hoids] procedure."  Doc. 1 at 3.

The medical defendants adamantly deny they acted with deliberate indifference to Russ' medical needs and maintain that Russ had continuous access to health care personnel and received treatment from medical professionals for his complaints during this time. The medical records before the court demonstrate that medical personnel at the Houston County Jail evaluated Russ each time he appeared at the medical unit for complaints related to his various health issues, assessed his need for treatment, prescribed medications to treat his conditions, ordered tests and studies to assist in treating Russ. and provided treatment to Russ in accordance with their professional judgment.  Doc. 38-2 at 2–25; Doc, 38-9 at 1–4; Doc. 41-3 at 1–4; Doc.43-1 at 1–5  The medical records further show that the jail's medical personnel referred Russ for treatment at free-world facilities when they deemed such off-site treatment necessary.

The defendants submitted sworn declarations in response to the complaint filed by Russ.  After a thorough and exhaustive review of the medical records submitted in this case, the court finds that the details of medical treatment provided to Russ as set forth by the medical defendants in their declarations are corroborated by the objective medical records contemporaneously compiled during the treatment process.

Defendant Hinson responds to the claims presented by Russ, in pertinent part, as follows:

> I am employed by the Houston County Sheriff as an LPN in the Houston County Jail.

I deny the allegations made against me by Plaintiff as being untrue and completely without basis in law or fact. I deny that I acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Specifically, I deny that Plaintiff has been housed in unconstitutional conditions or deprived of any rights guaranteed to him by the U.S. Constitution.

It is the policy of the Houston County Sheriff's Office that all inmates confined in the Houston County Jail be entitled to a level of health care comparable to that available to citizens in the surrounding community to ensure their physical and emotional well-being. All medical services rendered to inmates in the Houston County Jail are given under the direction of a licensed health care provider.  Sheriff's Office personnel are prohibited from ever summarily or arbitrarily denying an inmate's reasonable request for medical services. Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible medical care professional, and no member of the jail staff is allowed to substitute his or her judgment for those of the provider. Inmates are guaranteed access to any diagnostic, laboratory, or other treatment services as directed by the Jail medical professionals.

Medical care for inmates is provided through a local physician, a physician's assistant, and nurses. The Houston County Sheriff employs a PA and multiple LPNs at the jail who work under the direction of a licensed physician to assess and treat inmates within the facility or to refer inmates outside the facility for medical, dental, or mental health care.

During Plaintiff's incarceration Jason Smoak, P.A., practicing under the supervision of Mark Choquette, M.D., and multiple LPNs have provided medical care for inmates. The PA is present at the jail approximately eight hours a day Monday through Friday. An LPN is present at the jail daily.

Inmates needing medical care are examined at the medical clinic located inside the jail. The medical professionals run the medical clinic and all instructions of the medical personnel are followed by jail staff.

The medical staff prepares medication for distribution to inmates. The LPNs conduct "med call" on a set schedule each day at the jail.

I have not observed staff members of the Houston County Jail take any deliberate action to block, deny, or delay access of an inmate to health care. All instructions of medical personnel are followed by jail staff including all instructions regarding appointments with outside medical providers, dietary needs, housing and treatment for any inmate.  Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

Plaintiff was examined by medical professionals multiple times during his incarceration at the Houston County Jail and, to my knowledge, all instructions of medical staff have been followed by corrections staff.

Plaintiff has continually had access to medical professionals during his incarceration.

Specifically, I have taken no action to restrict, block or delay Plaintiff's access to any medical provider or any medical treatment.

Plaintiff was examined in the Houston County Jail medical clinic multiple times during his 2018 incarceration. Plaintiff was prescribed medications and was administered these medications. Plaintiff was not found to have any significant dental injury, eye injury or medical problem to require an emergency dental visit or an emergency visit to a vision professional. Plaintiff is HIV positive and was examined by medical professionals at the MAO [Medical Advocacy and Outreach] clinic in Dothan during his incarceration. Plaintiff was placed on the dental list to see the dentist that treats Houston County Jail inmates. However, Plaintiff was at the Haven substance abuse treatment center when his dental appointment was scheduled. When Plaintiff returned to the Houston County Jail after being at the Haven [Substance Abuse Treatment Center] he was examined by a dentist on October 24, 2018. Plaintiff refused medical treatment multiple times during his incarceration.

At no time, was Plaintiff denied adequate medical care during his incarceration in the Houston County Jail. Specifically, Plaintiff was not denied adequate dental or vision care.

Jail records establish that Plaintiff suffered no unconstitutional treatment while confined at the Houston County Jail.

Doc, 41-3 at 1–3 (paragraph numbering omitted). In his initial declaration, defendant Smoak echoes the information provided by defendant Hinson. Doc. 38-9 at 1–3.

In compliance with an order of the court, defendant Smoak filed a second declaration in which he provides a detailed recitation of the treatment provided to Russ relevant to the claims pending in this case. This declaration contains the following pertinent information.

I am employed by the Houston County Sheriff as a Physician Assistant in the Houston County Jail.

Plaintiff was booked into the Houston County Jail on April 9, 2018. Plaintiff filed his Complaint in this lawsuit on August 8, 2018. On August 17, 2018, Plaintiff was released from the Houston County Jail and entered the Haven Substance Abuse Treatment Center. Plaintiff was again incarcerated in the Houston County Jail on September 14, 2018.

Plaintiff was examined by medical professionals multiple times during his incarceration at the Houston County Jail and, to my knowledge, all instructions of medical staff have been followed by corrections staff. Plaintiff has continually had access to medical professionals during his incarceration.

I examined Plaintiff due to his complaints of pain in his tooth on June 11, 2018. After examining Plaintiff, I determined that his dental situation did not rise to an emergency level. Thus, he was placed on the list to be taken to the dentist for treatment. Typically, the local dentist who has agreed to treat inmates of the Houston County Jail will examine 4 or 5 inmates with non-emergency dental issues a month. Plaintiff's turn on the dental list came when he had been released from jail. Thus, because Plaintiff was no longer incarcerated at the Houston County Jail he was removed from the dental list. When Plaintiff returned to the Houston County Jail and again complained of dental pain he was placed on the dental list. Plaintiff was examined by a dentist on October 24, 2018.

I received no communication from any medical professional, from the MAO clinic or otherwise, recommending emergency dental treatment or necessitating an emergent appointment with a vision professional due to Plaintiff's diabetic condition or otherwise.

I have never refused to treat Plaintiff for any medical issue. Specifically, I have never refused to treat Plaintiff for any digestive issue or for hemorrhoids. Plaintiff made a complaint to me that he suffered from hemorrhoids and demanded an emergency appointment at a colon specialist. I informed Plaintiff that I would need to examine the Plaintiff and if the issue rose to the level of needing a specialist then I would make such an appointment. Plaintiff became angry and refused to be examined.

Plaintiff becomes angry when he does not get the specific medical treatment he requests. Plaintiff constantly threatens legal action when he is not given the exact treatment he requests.

On April I 0, 2018, Plaintiff reported to medical staff that he was diabetic, HIV positive, had high blood pressure and suffered from asthma. Plaintiff reported non-compliance with his medications and doctor's instructions. Plaintiff was told that appropriate medications would be ordered.  On April 11, 2018, Plaintiff received his intake examination. Plaintiff again discussed that he had not been taking his prescribed medications  and had not been going to appointments at the MAO clinic. Several medications were prescribed for Plaintiff.

Plaintiff was transported to the MAO clinic on April 17, 2018. I spoke with a nurse at the MAO clinic regarding Plaintiff's medication needs.

I examined Plaintiff on April 25, 2018 for a follow-up appointment. Plaintiff was angry that he had not been prescribed a certain brand of inhaler. Plaintiff was not in respiratory distress and was offered a suitable substitute

that was available on the jail formulary. Plaintiff was angry that I would not prescribe him the exact brand of inhaler that he desired and refused the prescription for the comparable inhaler. Plaintiff requested that jail staff contact his family members and request that his inhaler be brought to the jail. I agreed, and the inhaler and any other medications were requested from family members.

Plaintiff then complained of hemorrhoids and demanded to be sent to a digestive health specialist for a colonoscopy. I informed Plaintiff that I would need to perform a physical exam and offered to prescribe medications to treat hemorrhoids. I informed Plaintiff that if my physical exam indicated that he needed to be referred to a specialist then I would make that referral. Plaintiff became angry and threatened to file a lawsuit if he was not given the medical treatment he demanded. I again offered Plaintiff medical treatment for his complaint of hemorrhoids but he refused and left the exam room. He was angry and agitated. Plaintiff refused to sign a form indicating that he has refused medical treatment for his complaints on April 25, 2018.

Plaintiff's blood pressure was checked on April 29, 2018.

On May 4, 2018, a member of Plaintiff's family brought an inhaler for him to the jail. On May 7, 2018, five medications were brought to the jail for Plaintiff from a family member.

Plaintiff's blood pressure was checked on May 13, 2018.

I examined Plaintiff on May 22, 2018 for a follow up exam. He reported he was doing well on his current medications and complained of a sore throat and was prescribed cold medication.

On June 11, 2018, Plaintiff was seen at sick call. Plaintiff complained that his tooth was painful and that his face was swelling. He was prescribed antibiotic and pain medication. I examined Plaintiff's tooth. Plaintiff's dental issue did not . . . rise to the level of a dental emergency. Thus, Plaintiff was placed on the list to see a dentist.

On July 3, 2018, Plaintiff was transported to the MAO clinic. Clinic staff noted that Plaintiff has been in medical noncompliance when not incarcerated. A follow up appointment at the MAO clinic was scheduled.

On July 11, 2018, the MAO clinic contacted Houston County Jail medical staff and stated that they could not write prescriptions for Plaintiff at that time because he was a Medicaid patient. The clinic asked the Houston County Jail to write Plaintiff's prescriptions. Plaintiff was told this information. Plaintiff became angry because of the $10 charge for medications at the jail and requested that the jail not fill his prescriptions.

Plaintiff's blood pressure was checked on July 20, 2018.

On August 8, 2018, Plaintiff was seen at sick call with complaints of glaucoma and eye swelling. I examined Plaintiff and he showed no symptoms of glaucoma. I reviewed his records from who he stated to be his vision professional. His last visit to an eye care professional was more than

five years ago. I explained to Plaintiff that my exam showed no acute condition to require an exam by an eye care specialist.

Plaintiff's dental appointment was scheduled for August 22, 2018; however, Plaintiff was not incarcerated in the jail on this date.   Plaintiff returned to the jail on September 14, 2018 and was placed back on the list to see the dentist on September 15, 2018.  Plaintiff was examined by a dentist October 24, 2018.

Specifically, I have taken no action to restrict, block or delay Plaintiff's access to any medical provider or any medical treatment.

At no time, was Plaintiff denied adequate medical care during his incarceration in the Houston County Jail.  Specifically, Plaintiff was not denied adequate dental or vision care.

Jail records establish that Plaintiff suffered no unconstitutional treatment while confined at the Houston County Jail.

Doc. 43-1 at 1–5 (paragraph numbering omitted).

Under the circumstances of this case, the court concludes that the course of treatment undertaken by medical personnel at the Houston County Jail did not violate Russ' constitutional rights as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness."  *Harris*, 941 F.2d at 1505.  Whether "additional diagnostic techniques or forms of treatment [should have been ordered] 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted); *Garvin*, 236 F.3d at 898 (holding that difference of opinion regarding manner in which to address a medical complaint fails to demonstrate a constitutional violation); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991) (The failure of medical personnel to pursue alternative means of treating inmate's condition does not "rise beyond negligence

to the level of [deliberate indifference]."); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).  As is also clear, the mere failure of the medical defendants to refer Russ to outside specialists did not constitute deliberated indifference. *Amarir*, 243 F. A'ppx at 354. In addition, Russ has failed to present any evidence which indicates Nurse Hinson or Physician Assistant Smoak knew that the manner in which medical personnel provided treatment to Russ for his conditions created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that defendants Hinson and Smoak acted with deliberate indifference to Russ' medical needs.  Moreover, it is clear to the undersigned that the medical treatment provided to Russ was objectively reasonable.

   **2.  Sheriff Donald Valenza, Major Bill Rafferty, Commander James Brazier, Officer Spencer Downs and Officer Michael Champion**.  The evidentiary materials submitted by the defendants establish that defendants Valenza, Rafferty, Brazier, Downs and Champion are not in any way involved in decisions regarding medical treatment provided to inmates housed in the Houston County Jail.  Doc. 38-7 at 1–4; Doc. 38-8 at 1–4; Doc. 41-1 at 1–4; Doc. 41-2 at1–4; Doc. 41-4 at 1–4.

   In his declaration, defendant Valenza provides the following relevant information:

> It is the policy of the Houston County Sheriff's Office that all inmates confined in the Houston County Jail be entitled to a level of health care comparable to that available to citizens in the surrounding community to ensure their physical and emotional well-being. All medical services rendered to inmates in the Houston County Jail are given under the direction of a licensed health care provider. Sheriff's Office personnel are prohibited from ever summarily or arbitrarily denying an inmate's reasonable request

for medical services. Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible medical care professional, and no member of the jail staff is allowed to substitute his or her judgment for those of the provider. Inmates are guaranteed access to any diagnostic, laboratory, or other treatment services as directed by the Jail medical professionals.

Medical care for inmates is provided through a local physician, a physician's assistant, and nurses. The Houston County Sheriff employs a PA and multiple LPNs at the jail who work under the direction of a licensed physician to assess and treat inmates within the facility or to refer inmates outside the facility for medical, dental, or mental health care.

During Plaintiff's incarceration Jason Smoak, P.A., practicing under the supervision of Mark Choquette, M.D., and multiple LPNs have provided medical care for inmates. The PA is present at the jail approximately eight hours a day Monday through Friday. An LPN is present at the jail daily.

Inmates needing medical care are examined at the medical clinic located inside the jail. The medical professionals run the medical clinic and all instructions of the medical personnel are followed by jail staff.

The medical staff prepares medication for distribution to inmates. The LPNs conduct "med call" on a set schedule each day at the jail.

Staff members of the Houston County Jail take no deliberate action to block, deny, or delay access of an inmate to health care. All instructions of medical personnel are followed by jail staff including all instructions regarding appointments with outside medical providers, dietary needs, housing and treatment for any inmate. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

Plaintiff was examined by medical professionals multiple times during his incarceration at the Houston County Jail and, to my knowledge, all instructions of medical staff have been followed by corrections staff. Plaintiff has continually had access to medical professionals during his incarceration.

Specifically, I have taken to action to restrict, block or delay Plaintiff s access to any medical provider or any medical treatment.

Doc. 41-2 at 2–3 (paragraph numbering omitted).  Each of the correctional defendants submitted a similar declaration attesting to allowing Russ access to the jail's medical personnel for evaluation, following all instructions given by medical personnel regarding

treatment for Russ and denying any involvement with treatment decisions.  Doc. 38-7 at

1–4;Doc. 38-8 at 1–4; Doc. 41-1 at 1–4; Doc. 41-4 at 1–4.

Russ has failed to establish deliberate indifference on the part of defendants

Valenza, Rafferty, Brazier, Downs and Champion as he has not demonstrated that these

defendants were aware of facts establishing "an objectively serious medical need" nor that

they consciously disregarded any known serious risk to his health.  *Taylor*, 221 F.3d at

1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must

know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d

at 168 (holding that defendant must have actual knowledge of a serious condition, not just

knowledge of symptoms, and ignore known risk to serious condition to warrant finding of

deliberate indifference).

Insofar as Russ seeks to hold defendants Valenza, Rafferty, Brazier, Downs and

Champion liable for the treatment provided by medical professionals, he is likewise entitled

to no relief as

> "[t]he law does not impose upon [jailers] a duty to directly supervise health
> care personnel, to set treatment policy for the medical staff or to intervene in
> treatment decisions where they have no actual knowledge that intervention
> is necessary to prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550
> F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought
> against managing officers of a prison absent allegations that they were
> personally connected with the alleged denial of treatment).  Moreover,
> "supervisory [jail] officials are entitled to rely on medical judgments made
> by medical professionals responsible for prisoner care. *See, e.g., Durmer v.
> O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322,
> 327 (8th Cir. 1988)."  *Williams v. Limestone County, Ala.,* 198 Fed.Appx.
> 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Finally, to the extent Russ seeks to hold defendants Valenza, Rafferty, Brazier, Downs and Champion liable under a theory of respondeat superior or vicarious liability, he is entitled to no relief as the law is well-settled that liability in a 42 U.S.C. § 1983 action may not be based on either of these the theories. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior."); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[O]fficials are not liable under § 1983 for the unconstitutional acts of their subordinates [or co-workers] on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (holding 42 U.S.C. § 1983 does not allow a plaintiff to hold officials liable for the actions of other officials under either a theory of respondeat superior or vicarious liability.). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability could attach to defendants Valenza, Rafferty, Brazier, Downs and Champion only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Since these defendants did not participate in the provision of medical treatment to Russ, the court will address whether a causal connection existed.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Valenza, Rafferty, Brazier, Downs and Champion, Russ

must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [defendants Valenza, Rafferty, Brazier, Downs and Champion] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in [the alleged constitutional violation], or . . . facts [that] support an inference that [Valenza, Rafferty, Brazier, Downs and Champion] directed [the medical defendants] to act unlawfully, or knew that [they] would act unlawfully and failed to stop [them] from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  After extensive review of the pleadings and evidentiary materials submitted in this case, it is clear that Russ has failed to meet this burden.

The record before the court contains no evidence to support an inference that defendants Valenza, Rafferty, Brazier, Downs and Champion directed the medical defendants to act unlawfully or knew that they would act unlawfully and failed to stop such action.  In addition, Russ has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Valenza, Rafferty, Brazier, Downs and Champion failed to take corrective action.  Finally, the records before the court demonstrate that the medical defendants did not act pursuant to a policy enacted by Valenza, Rafferty, Brazier, Downs and Champion when deciding the course of medical treatment provided to Russ; instead, they provided treatment to him in accordance with their professional judgment.  Thus, the requisite causal connection does not exist in this case as to defendants Valenza, Rafferty, Brazier, Downs and Champion and their liability under the custom or policy standard is likewise not justified.  Moreover, "[i]n light of the Court's determination that there was no constitutional deprivation [as to the medical treatment provided to Russ],

there is no basis for supervisor liability." *Nam Dang*, 871 F.3d at 1283, citing *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007).

3.   **Summation on Defendants' Liability**.   For the foregoing reasons, the defendants are entitled to qualified immunity from the plaintiff's request for monetary damages made against them in their individual capacities, the plaintiff is due no other relief from the defendants and summary judgment is due to be granted in favor of the defendants on the plaintiff's claims alleging a violation of his constitutional rights ding deliberate indifference to his medical needs.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  Other than the filing fee assessed to the plaintiff in this case, no costs be taxed.

On or before **July 20, 2021** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendation of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall

"waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 6th day of July, 2021.


  /s/ Charles S. Coody
UNITED STATES MAGISTRATE JUDGE